# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBERTA L. ROCCO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. CIV-20-929-STE |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant.[1] | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

---

[1]  Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.   PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 18-36). The Appeals Council denied Plaintiff's request for review. (TR. 1-4). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 28, 2016, the alleged onset date.. (TR. 21). At step two, the ALJ determined Ms. Rocco suffered from the following severe impairments:

> [R]ight clavicular injury, right shoulder injury, injury to right, dominant hand with amputation of the fifth digit; status-post irrigation and debridement of skin, subcutaneous tissues and fascia associated with an open fracture, open reduction and internal fixation of pubic symphysis, and percutaneous fixation of left sacroiliac joint disruption; status-post traumatic amputation of right small digit, complex laceration/wound to right hand, and right first metacarpal fracture; APC pelvic ring injury and left sacral ala fracture; pelvic fractures; rib fractures 1 through 7 with a flail segment 2 through 4, and left 1st rib fracture; burn of third degree of multiple sites of right hand, fingers, thumb, wrist, and forearm; status-post application of right elbow fixator for an elbow dislocation and right elbow contracture; status-post right open elbow fracture dislocation, right hand degloving injury with 5th metacarpal fracture and bone loss and 1st metacarpal fracture dislocation of 1st MTP joint, right mangling hand injury with open fractures of the thumb metacarpal shaft and small finger metacarpal shaft and proximal phalanx/near-complete amputation of the small finger skeletal elements, and complex open wound.

(TR. 21). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 22).

At step four, the ALJ concluded that Ms. Rocco retained the residual functional capacity (RFC) to:

> [P]erform light exertion work as defined in 20 CFR 404.1567(b), except with the right hand the claimant cannot push and/or pull (including operation of right hand controls) because of a "non-functional right hand." The claimant's ability to push and/or pull (including operation of left hand controls and bilateral foot controls) is unlimited up to 20 pounds occasionally and 10 pounds frequently. The claimant cannot climb ladders, ropes, or scaffolds. The claimant can occasionally stoop, kneel, crouch, and crawl. The claimant can frequently balance. The claimant can reach overhead. With the right upper extremity, the claimant has an unlimited ability to reach in all other directions (except overhead reaching). With the left upper extremity, the claimant has an unlimited ability to reach in all directions (including overhead reaching). With the right hand, the claimant cannot handle, finger, and feel. The claimant has no other limitations or restrictions. The use of a wheelchair was not medically required for the minimum durational period of at least twelve-consecutive months. The claimant has no other physical limitations or restrictions. The claimant has no mental limitations or restrictions.

(TR. 23).

With this RFC, the ALJ concluded that Plaintiff was not capable of performing her past relevant work. (TR. 35). As a result, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 98-99). Given the limitations, the VE identified one job from the Dictionary of Occupational Titles that Plaintiff could perform. (TR. 93, 99-100). The ALJ then adopted the VE's testimony and concluded, at step five, that that Ms. Rocco was not disabled based on her ability to perform the identified job. (TR. 36).

**III.    ISSUES PRESENTED**

On appeal, Plaintiff alleges error in the ALJ's evaluation of: (1) medical evidence and (2) Plaintiff's subjective allegations. (ECF Nos. 21:8-30).

**IV.    STANDARD OF REVIEW**

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

**V.    THE ALJ'S CONSIDERATION OF MEDICAL EVIDENCE AND OPINIONS**

Ms. Rocco alleges error in the ALJ's failure to properly evaluate certain medical evidence. The Court agrees.

### A.    Definition of Medical Evidence and Medical Opinions

The Social Security Administration has defined categories of evidence, including—as pertinent here—objective medial evidence and medical opinions. *See* 20 C.F.R. § 404.1513(a)(1), (2). Objective medical evidence consists of medical signs, laboratory findings, or both, as defined in 20 C.F.R. § 404.1502(f). 20 C.F.R. § 404.1513(a)(1). Medical opinions are statements from a medical source about what the claimant can do despite impairments and whether the claimant has certain work-related abilities and/or limitations. 20 C.F.R. § 404.1513(a)(2).

### B.    The ALJ's Duty to Evaluate Medical Opinions

Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). For claims filed after March 27, 2017, such as Ms. Rocco's,[2] 20 C.F.R. § 404.1520c provides that the Commissioner no longer will "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings[.]" 20 C.F.R. § 404.1520c(a). Instead, the ALJ need only articulate how persuasive he finds the medical opinion. 20 C.F.R. § 404.1520c(b). Persuasiveness is determined primarily by an opinion's supportability and consistency, and the ALJ must explain how he considered those factors. 20 C.F.R. § 404.1520c(b)(2) & (c)(1)-(2). In addition, the ALJ may, but is not required to, discuss other considerations that may bear on the persuasiveness of a medical opinion, such as the relationship of the source to the claimant, the source's area of specialization, and other factors such as the source's familiarity with the disability

---

[2] *See* TR. 18.

program's policies and evidentiary requirements. *See* 20 C.F.R. § 404.1520c(c)(3)-(5). The ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Additionally, the ALJ may not selectively review any medical opinion and must provide a proper explanation to support his findings. *See Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) ("We have repeatedly held that [a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."). And if the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

### C. The ALJ's Duty to Evaluate Medical Evidence

The Social Security regulations require the ALJ to "consider all evidence in [the] case record when [he] make[s] a determination or decision whether [claimant is] disabled." 20 C.F.R. § 404.1520(a)(3). Although the record must demonstrate that the ALJ considered all of the evidence, he is not required to discuss every piece of evidence. *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. *Id.* Finally, in considering medical evidence, an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (citation omitted).

### D. Medical Evidence and Opinions at Issue

Plaintiff was involved in a horrific motorcycle accident on November 28, 2016, which resulted in multiple injuries and surgeries, including a broken pelvis, fractured ribs, broken hips, injury to her right upper extremity resulting in severe pain and limited mobility, and amputation of the fifth digit on her right hand. *See* TR. 354-577. Plaintiff was hospitalized at OU Medical Center from the date of her accident until December 20, 2016 when she was discharged by Drs. Millard Henry and Victor Davis. TR. 357-361. In the discharge notes, Drs. Henry and Davis provided the following instructions: "No heavy lifting greater than 10 pounds until cleared by Ortho." (TR. 360).

Following an 18-day stint at Jim Thorpe Rehabilitation Center post-discharge,[3] Plaintiff continued follow-up care with various physicians and surgeons from OU Medical, including orthopedists, Drs. Zachary Roberts and Thomas Lehman. On February 9, 2017, Dr. Roberts wrote the following impression of Plaintiff: "I think Ms. [Rocco's] pelvis is doing well. I think she can continue ambulating as tolerated, and I wrote for her to be able to return to work mid next week. She has a sedentary position and says she should be ready to return by then." (TR. 602). On June 23, 2017, Dr. Lehman's examination notes stated: "We gave [Ms. Rocco] a note today to start working at ½ day, and she'll follow up with us in 4-6 weeks for range of motion checks." (TR. 583).

On February 23, 2018, Dr. Raymond Azadgoli performed a consultative examination on Plaintiff at the request of the SSA. (TR. 700-706). In his written report, Dr. Azadgoli stated that Plaintiff suffered significant injuries to the right upper extremity

---

[3] (TR. 318-349).

7

with Plaintiff's right hand being "essentially nonfunctional." (TR. 701). Dr. Azadgoli also completed a "range of joint motion evaluation chart" where he documented Plaintiff's right shoulder range of motion as limited to 60 out of 150 degrees on abduction and elevation, 10 out of 30 degrees on adduction, and 20 out of 80 degrees on internal and external rotation. (TR. 704).

Plaintiff alleges error in the consideration of the evidence from Drs. Henry, Davis, Roberts, Lehman, and Azadgoli. (ECF No. 21:8-20).

### E. The ALJ's Consideration of the Challenged Opinions and Evidence

The Court finds error in the ALJ's consideration of: (1) opinion evidence from Drs. Henry and Davis and (2) objective medical evidence from Dr. Azadgoli.

#### 1. Medical Opinion from Drs. Henry and Davis

As stated, on discharge from OU Medical on December 20, 2016, Drs. Henry and Davis limited Plaintiff to "no heavy lifting greater than 10 pounds until cleared by Ortho." (TR. 360). This statement constituted a medical opinion,[4] and as such, the ALJ had a duty to articulate how persuasive he found the opinion, as determined primarily by the opinion's supportability and consistency. 20 C.F.R. § 404.1520c(b)(2) & (c)(1)-(2).

The administrative decision makes no mention of the opinion from Drs. Henry and Davis, but instead makes only a passing reference to Plaintiff's discharge on December 20, 2016. (TR. 29). This omission constitutes legal error, especially in light of the fact that the opinion conflicts with the ALJ's RFC finding that Plaintiff could perform the demands of "light" work, as defined in 20 C.F.R. § 404.1567(b) which "involves lifting no

---

[4] *See supra*; *see also* 20 C.F.R. § 404.1513(a)(2).

more than 20 pounds at a time[.]" 20 C.F.R. § 404.1567(b). Defendant essentially argues that any error in the ALJ's failing to discuss the lifting limitation is harmless, because it was temporary, "until cleared by Ortho," and in February and June 2017, two orthopedists—Drs. Roberts and Lehman—cleared Plaintiff to work with no specific lifting restrictions. (ECF No. 25:11). The Court disagrees.

The Tenth Circuit Court of Appeals has taken the following approach regarding the application of a harmless-error approach in the context of a social security case:

> [I]t nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.

*Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Here, it is apparent that the lifting restriction opined by Drs. Henry and Davis was to last only until Plaintiff had been "cleared by Ortho." And although two orthopedists, Drs. Roberts and Lehman, cleared Plaintiff for work with no specific mention of a lifting restriction, Dr. Lehman opined that on June 23, 2017, Plaintiff had "no active range of motion" in her shoulder and was insensate below the shoulder. (TR. 583). Dr. Lehman also stated that Plaintiff was "unable to fire her biceps and triceps," and had "no active range of motion" in her wrist. (TR. 583). The Court is making no findings on whether Plaintiff's limitations, as documented by Dr. Lehman, resulted in any type of lifting limitation. However, in light of the evidence from Dr. Lehman, an orthopedist, the Court cannot "confidently say that the outcome would not have been resolved differently" if the ALJ had considered the lifting restriction opined by Drs. Henry and Davis.

9

The ALJ committed legal error by completely overlooking the lifting restriction opined by Drs. Henry and Davis. Furthermore, evidence exists in the exact treatment notes on which Defendant relies for her harmlessness argument which raises a question as to whether, indeed, Plaintiff had ever been "cleared by Ortho" regarding her ability to lift more than 10 pounds. The Commissioner would have the Court rely on a lack of documentation regarding lifting restrictions in the notes from Drs. Lehman and Roberts as conclusive proof that no limitation existed. But because the opinion was overlooked in the first instance; and there is scant evidence regarding whether the limitation had been removed, the Court rejects Defendant's argument and finds that remand is warranted for further consideration of the opinion.

### 2. Information from Drs. Roberts and Lehman

On February 9, 2017, Dr. Roberts stated that he had written a note for Plaintiff to return to work the following week and that "[Ms. Rocco] has a sedentary position and says she should be ready by then." (TR. 602). Plaintiff argues that this statement, "read in context," "indicates [Dr. Roberts] was releasing [Ms.] Rocco to work on the basis that she had a sedentary job." (ECF No. 21:15). According to Ms. Rocco, "[b]y finding that [Ms.] Rocco could do light work, the ALJ disregarded Dr. Roberts' finding." (ECF No. 21:15). Plaintiff's argument requires the Court to find that Dr. Roberts' comment constituted a medical opinion limiting Plaintiff to only sedentary work. But Dr. Roberts made no such finding and the statement was certainly not a medical opinion. Indeed, the statement was nothing more than a notation regarding the type of work that Plaintiff performed and would be returning to. The Court rejects Plaintiff's argument otherwise.

On June 23, 2017, the treatment notes from an office visit with Dr. Lehman stated: "We gave [Plaintiff] a note today to start working at ½ day, and she'll follow up with us in 4-6 weeks for range of motion checks." (TR. 583). Ms. Rocco argues that the ALJ "never explained why he disregarded Dr. Lehman's limitation to only working half days." (ECF No. 21:15). Again, Plaintiff's argument requires the Court to find that Dr. Lehman had rendered a medical opinion, limiting Plaintiff to only working half days. But Dr. Lehman made no such finding, noting instead that Plaintiff would be starting off her return to work by working half days. Furthermore, the ALJ discussed the restriction extensively at step one, noting:

> At a June 23, 2017, office visit with Dr. Thomas Lehman, M.D., Dr. Lehman gave the claimant a note to start working half days on July 1, 2017.
>
> From July 3, 2017 through August 4, 2017, [Plaintiff] worked as a senior claims adjuste[r] for employer CMR. According to the claimant, she worked nine hours per week, earning $13.71 per hour. She testified that this job ended because she sustained burns at physical therapy.
>
> In a written statement, the claimant alleged, "I was terminated by my employer on 8/4/2017 after the two weeks I attempted to return to work from the MVA [Motor Vehicle Accident] half days as tolerated per work release from my doctor[.]" The claimant worked after the alleged disability onset date but this work activity did not rise to the level of substantial gainful activity.

(TR. 21).

The Court finds that the ALJ sufficiently discussed the restriction to half days in accordance with the import of the limitation—Plaintiff did in fact return to work half days, but the amount of time working failed to constitute "substantial gainful activity." The Court finds no error in the ALJ's failure to otherwise discuss Dr. Lehman's statement.

### 3.     Objective Medical Evidence from Dr. Azadgoli

As stated, On February 23, 2018, Dr. Raymond Azadgoli performed a consultative examination on Plaintiff at the request of the SSA. (TR. 700-706). In his notes documenting Plaintiff's extremities, Dr. Azadgoli stated that Plaintiff suffered significant injuries to the right upper extremity with Plaintiff's right hand being "essentially nonfunctional." (TR. 701). Dr. Azadgoli also completed a "range of joint motion evaluation chart" where he documented Plaintiff's right shoulder range of motion as limited to 60 out of 150 degrees on abduction and elevation, 10 out of 30 degrees on adduction, and 20 out of 80 degrees on internal and external rotation. (TR. 704).

In the decision, the ALJ scripted, verbatim, the entirety of Dr. Azadgoli's written report, as well as the physician's findings on certain "yes/no" questions regarding Plaintiff's ability to oppose thumb to fingertip, manipulate small objects, and effectively grasp tools. *See* TR. 31-32. The ALJ then stated: "The undersigned finds the medical opinion by Dr. Azadgoli is well-supported by the evidence and is persuasive." (TR. 32).

According to Plaintiff, the ALJ apparently rejected the right shoulder range of motion findings by Dr. Azadgoli because the ALJ adopted the opinion, but the findings conflict with the ALJ's conclusion that Ms. Rocco had an unlimited ability to reach in all directions except overhead, with her right arm. (ECF No. 21:16-18). Plaintiff concedes that it was the ALJ's prerogative to reject the evidence, but argues that if he chose to do so, he had a duty to explain why, which the ALJ did not do. (ECF. 21:16-18).

The Court begins by noting that the findings from Dr. Azadgoli documenting Plaintiff's range of motion in her right shoulder are considered objective medical evidence,

not medical opinions. Plaintiff argues the latter, by repeatedly referring to "limitations" proffered by Dr. Azadgoli,[5] but in fact, the physician rendered no specific limitations based on the reduced range of motion. *See* TR. 700-706. Despite the fact, however, that Dr. Azadgoli did not render a "medical opinion" on Plaintiff's ability to reach, the evidence is probative on the issue and the ALJ had a duty to discuss it. *See supra*.

Here, the ALJ summarized Dr. Azadgoli's written report, verbatim, but the report itself was ambiguous regarding the actual findings regarding the range of motion in Plaintiff's shoulder. In the report, Dr. Azadgoli stated: "ROM of the shoulders, elbows, wrists and hands are as noted on ROM flow sheet[.]" (TR. 701). In the decision, the ALJ parroted this statement in summarizing the evidence from Dr. Azadgoli, but the decision is silent regarding whether the ALJ actually considered the range of motion findings themselves. As argued by Ms. Rocco, the evidence was probative on the issue of Plaintiff's ability to reach in all directions, which, in turn, could have affected the ALJ's reliance on Plaintiff's ability to perform the sole job of "furniture rental clerk," a job which requires the ability to reach "occasionally" (up to one-third of the time). *See* DOT # 295.357-018. In defense of the ALJ's failure to discuss the evidence, the Commissioner cites two cases from this Court which affirmed an ALJ's consideration of evidence from Dr. Azadgoli. The Court finds both cases distinguishable from the instant case.

First, in *Sowle-Frantz v. Saul*, Case No. CIV-20-325-STE (W.D. Okla. Jan. 27, 2021), the issue involved the ALJ's alleged error in considering range of motion findings from Dr. Azadgoli. In *Sowle-Frantz*, the Court found no error in the ALJ's consideration of

---

[5] *See* ECF No. 21:16, 17.

13

the evidence because: (1) Dr. Azadgoli had not attributed any particular limitations to the reduced range of motion and (2) it was clear from the administrative decision that the ALJ had, in fact, considered the evidence. *See* ECF No. 6:4-6, *Sowle-Frantz v. Saul*, Case No. CIV-325-STE (W.D. Okla. Jan. 27, 2021). Here too, the Court has already rejected any argument that the ALJ erred in failing to evaluate a medical opinion from Dr. Azadgoli, as the physician rendered none. *See supra*. However, unlike in *Sowle-Frantz*, it is not apparent that the ALJ in this case had actually considered the evidence, as the decision simply parrots Dr. Azadgoli's statement that the "ROM of the shoulders, elbows, wrists and hands are as noted on ROM flow sheet[.]" (TR. 32). But the ALJ never discussed what was actually noted on the "ROM flow sheet." The omission was error considering the probative nature of the examination findings in relation to Plaintiff's ability to reach and potentially perform the job of furniture rental clerk.

Second, in *Rickey v. Saul*, Case No. CIV-20-297-SM (W.D. Okla. Dec. 22, 2020), the plaintiff argued that the ALJ failed to "fully discuss" range of motion findings in Dr. Azadgoli's report that conflicted with postural limitations in the RFC. *See* ECF No. 18:6-7, *Rickey v. Saul*, Case No. CIV-20-297-SM (W.D. Okla. Dec. 22, 2020). The Court rejected the plaintiff's argument, however, because the ALJ had adopted the opinion of a medical expert whose opinion correlated with the postural limitations in the RFC and the plaintiff "d[id] not challenge the weight the ALJ gave to [the] expert." *See* ECF No. 18:7, *Rickey v. Saul*, Case No. CIV-20-297-SM (W.D. Okla. Dec. 22, 2020). Here, unlike as in *Rickey*, the ALJ did not rely on any other medical finding that specifically discussed Plaintiff's potential limitations in her ability to reach in all directions. Although Defendant points to

the ALJ's reliance on the State Agency findings from Dr. Mahendra Shah,[6] who cited Dr. Azadgoli's report in concluding only that Plaintiff could not reach overhead, there is no indication in Dr. Shah's report that she considered Dr. Azadgoli's actual examination findings. *See* TR. 144.

### 4. Summary

In sum, the Court finds that the ALJ erred in failing to consider: (1) the medical opinion of Drs. Henry and Davis regarding Plaintiff's limitation on lifting and (2) the medical evidence concerning Plaintiff's limitation in range of motion in her right shoulder. On remand, the ALJ shall reconsider the medical opinion and objective medical evidence in accordance with the standards outlined above.

## V. PLAINTIFF'S ADDITIONAL ALLEGATION OF ERROR

Ms. Rocco also argues that the ALJ erred in failing to consider her subjective allegations related to her pain. (ECF No. 21:20-30). The Court need not consider this issue in light of the remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."); *Mando v. Saul*, 2020 WL 34409, at *6 (W.D. Okla. Jan. 2, 2020) (declining to address allegation that the ALJ improperly assessed subjective allegations, because remand was warranted on the issue involving ALJ's review of medical evidence which supported plaintiff's statements).

---

[6] (TR. 32-33).

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on August 27, 2021.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE